1                  UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                        MIAMI DIVISION

3

4

5

6    IN RE:                          CASE NO. 18-24871-RAM
                                     CHAPTER 15
7    VIACAO ITAPEMIRIM, S.A., et al.,

8        Debtors in a Foreign Proceeding.
     _____/
9

10

11                          ECF# 2

12

13                     December 27, 2018

14

15              The above-entitled cause came on for hearing

16   before the  Honorable ROBERT A. MARK, one of the Judges in

17   the   UNITED  STATES  BANKRUPTCY  COURT, in  and  for  the

18   SOUTHERN DISTRICT OF FLORIDA,  at  301 North Miami Avenue,

19   Miami, Miami-Dade County,  Florida, on  December 27, 2018,

20   commencing  at  or  about  1:33 p.m.,  and  the  following

21   proceedings were had:

22

23

24       Transcribed from a Digital Audio Recording by:
                 Margaret Franzen, Court Reporter
25

1                        APPEARANCES:

2

3

                    SEQUOR LAW, by
                GREGORY S. GROSSMAN, ESQ
                         and
5                   FELIPE VIERA, ESQUIRE
                    (Brazilian Counsel)
6       On behalf of the Foreign Representative

7

8

                    ALSO PRESENT:

9

10

11              ELIAS MUBARAK, ESQUIRE,
                Foreign Representative

12

13

14     ECRO - Electronic Court Reporting Operator

15

16               - - - - - - -

17

18

19

20

21

22

23

24

25

```
 1                    THE MARSHAL:  All rise.
 2                    THE COURT:  Okay.  Have a seat.  Thanks.
 3                    Let's get appearances in -- I don't know how
 4   to pronounce it, Item 12, the Chapter 15.
 5                    MR. GROSSMAN:  Good afternoon, Your Honor.
 6   I am Greg Grossman of Sequor Law on behalf of the foreign
 7   representative.  Along with me today is Felipe Viera,
 8   V-i-e-r-a, who is Brazilian counsel to the foreign
 9   representative, and the foreign representative is here,
10   Your Honor, Elias, E-l-i-a-s, Mubarak, M-u-b-a-r-a-k.
11                    THE COURT:  Okay.  Welcome.  Thank you.
12                    Okay.  Who was actually served with notice
13   for today?
14                    MR. GROSSMAN:  Nobody.
15                    THE COURT:  Okay, and they didn't object.
16                    MR. GROSSMAN:  They didn't object.
17                    I think when we first started filing
18   Chapter 15s, they hadn't -- they hadn't amended the rules.
19   It now says for purposes -- if you're asking for a foreign
20   main recognition, there's no summons issued, and there's
21   nobody to deliver the summons to, unless you're trying to
22   stop a lawsuit or unless there's an individual debtor, in
23   which you have to do that personally, which we've done in
24   other cases.
25                    Here we have no -- we have no natural person
```

1   debtors.

2          THE COURT:  And I was just curious, the --

3   the entity, forgive my pronunciation, Viacao Caicara, that

4   the proceeding was extended to, who are they?

5          MR. GROSSMAN:  They're an affiliate.

6   Actually, in one of the orders that's attached to our

7   petition, there is the -- the extension order itself

8   finding that there was diversion of assets by the prior

9   owners, the Colas, C-o-l-a, the family.

10         The Judge found that the Colas had engaged

11   in diversion of assets just before the petition was filed,

12   it was a voluntary petition, and that based upon the

13   connection of that entity to the other entities and the

14   diversion of assets, that an extension order was

15   warranted.

16         THE COURT:  But is this like some of the

17   others, where it's this -- this particular party who you

18   think may have assets here or it's a variety of debtor

19   entities without --

20         MR. GROSSMAN:  What we ---

21         THE COURT:  -- without disclosing the work

22   product?

23         MR. GROSSMAN:  Sure, sure.  What we have

24   disclosed in the petition is connections through the

25   United States, including, if you saw there was an attached

1    e-mail of a transaction between a U.S. corporation and one

2    of the debtors for a large sum of money that went through

3    a Swiss bank.  The Eurotech entity is an American entity,

4    Itapemirim is the bankruptcy debtor in Brazil, and it was

5    a Swiss bank account.  So since it was a transaction in

6    U.S. dollars, we think we should be able to figure out

7    what happened to that money, at least in part.

8                    What's interesting about that e-mail, Judge,

9    is it says it's a payment of a loan, and there's nothing

10    in the books and records showing that there was a loan to

11    the shareholders.  So there was apparently payment or

12    repayment of a loan that's not in the books and records of

13    the corporation.

14                    This case -- we're here seeking foreign main

15    recognition.  I do want to give the Court some background

16    because I do want to make sure -- this has a little bit of

17    a procedural saga that brought us here.

18                    It was early 2016 when five of the six

19    entities in the caption were filed -- filed bankruptcy

20    voluntarily for the reorganization in Brazil.

21                    In early 2017, the equity owners at the top

22    of the -- the ownership entities, sold their interests in

23    the bankruptcy debtors, which at that time was just five

24    of the six, sold their interests to what we call CSV and

25    SSG, the two entities that are disclosed in the petition.

1          In May of 2017, the extension order that we

2   attached was entered bringing into the bankruptcy estate

3   the Caicara firm, C-a-i-c-a-r-a.

4          Then in December of 2017, the Judge who was

5   then sitting, the Bankruptcy Judge who was then sitting in

6   Espirito Santo Province, the Bankruptcy Judge there,

7   removed management and took what was theretofore an

8   overseer/monitor role that is typical in every bankrupt --

9   every Brazilian reorganization, turned that

10  overseer/monitor into a trustee with managerial powers

11  over the corporation.

12         In July of 2018 -- in the interim a request

13  to change venue was made, and the Judge sitting in

14  Espirito Santo Province granted the motion to transfer

15  venue.

16         The Sao Paulo Judge, which is where the case

17  was transferred to in July of 2018, that order translated

18  is in the court file, removed the trustee who had been

19  given managerial powers, replaced that person with a new

20  entity to act only as monitor/overseer, the traditional

21  role for bankrupt -- for reorganizations in Brazil,

22  reappointed or reassigned the case back to the

23  debtor-in-possession, which was then owned still by CSV

24  and SSG, confirmed the venue transfer.

25         The -- that particular order is on appeal.

1  It was appealed by both the prior trustee and appealed by

2  the Cola family, through themselves individually and

3  perhaps through their corporations.

4          The trustee's appeal has already been

5  denied.  The Cola appeal remains pending.

6          THE COURT:  Well, who was put in?  It wasn't

7  the Colas that were put back in?

8          MR. GROSSMAN:  No, it was -- it was SSG

9  and -- and CSV were put back in.

10         What happened was they had -- the Judge had

11  given the overseer/monitor the managerial control.  So, in

12  other words, he essentially took back the additional

13  powers and put management back in control.  Management had

14  already been changed because the -- the company had been

15  sold earlier in the bankruptcy.

16         Okay.  Now, I go through this, Judge,

17  because then in November of this year, just this last

18  month, when we filed the Chapter 15 case, while we are

19  preparing the Chapter 15 case, the debtors, now

20  debtors-in-possession, with an order from the Judge

21  putting the position back with this company called Exame,

22  Exame, E-x-a-m-e, putting them in as monitor/overseer,

23  that order asks that entity to keep a much closer eye on

24  this case because of allegations that have been made of

25  prepetition misconduct, postpetition misconduct, and

1    apparently a lot of animosity amongst the players

2    throughout the history of the reorganization.

3              In November of this year, just this last

4    month, the company hired -- actually, submitted three

5    names to become new CEO of the company.  Those three names

6    were given to Exame, the new overseer/monitor, and

7    basically allowed them to pick from the three.  They

8    picked one of the three CEOs, and that person is now the

9    CEO of the company.

10             So what we have -- and the reason I'm going

11   through this, Judge, is that because there has been this

12   level of allegations and cross-allegations made between

13   the original owners, the Cola family, and the new owners,

14   SSG and CSV, the thought was to put a foreign

15   representative -- get a power of attorney for a foreign

16   representative whose duties are to the estate, and that's

17   where Mr. Mubarak comes in.

18             Mr. Mubarak is a bankruptcy lawyer, who was

19   actually counsel for the debtors in Brazil, because his

20   duties are to the estate.  He's now reporting to a CEO who

21   had been signed off on by the new monitor/overseer.

22             The reason I go through this, Judge, is to

23   make sure that the Court understands that nobody here is

24   pretending that allegations haven't been made.  The

25   thought is -- this is one of the largest, if not the

Page 9

1    largest bus company in Brazil.

2                THE COURT:  So just trying to keep the

3    sequence straight.  The -- was the power of attorney

4    authorizing Mr. Mubarak to act as a foreign -- act as

5    representative, including for purposes of this Chapter 15,

6    was that entered before the overseer picked the new CEO or

7    after?

8                MR. GROSSMAN:  I believe the power of

9    attorney was executed before the new CEO came on board.

10   He may have been picked, but I don't know whether he --

11   whether or not he was ---

12               THE COURT:  So is there an issue of whether

13   the new CEO has authorized the -- the -- the Chapter 15?

14               MR. GROSSMAN:  I don't think so because at

15   the time the power of attorney was entered, the folks who

16   had the ability to grant the power were the ones who

17   signed.

18               I'm giving a foreshadowing to the Court.  It

19   is possible, if this CEO pans out the way that the debtor

20   hopes, that we may be switching out foreign

21   representatives to allow the CEO to take over that role.

22               THE COURT:  But you don't expect the CEO to

23   challenge the authority of Mr. Mubarak?

24               MR. GROSSMAN:  We do not.  We do not.

25               THE COURT:  Okay.

1          MR. GROSSMAN:  And I think the tension here,

2    Judge, is that it was very deliberate because the CEO

3    reports to the directors of the company, who are owned --

4    ostensibly put on the board by SSG and CSV, and there's

5    been allegations made.

6          So the thought is it may be that we want to

7    wait a period of time to see how those things shake out,

8    but I wanted to make sure from what we do here in the

9    states, that the person who is directing my firm and the

10   person who is directing Mr. Viera's firm, is the person --

11   with respect to U.S., is the person who has a duty to the

12   estate.

13         THE COURT:  I think prior cases have

14   established, and the Code doesn't require a court order;

15   right?

16         MR. GROSSMAN:  That's correct.  The

17   Bankruptcy Judge is aware that the 15 was filed, and is

18   aware that Mr. Mubarak was selected to be the foreign

19   representative, but there's no court order, nor does the

20   Code require one, of course, in a debtor-in-possession

21   case.

22         So, Judge, with that -- with that

23   background, I think we meet all of the elements.

24   Obviously, Brazil is foreign, it has a collective

25   proceeding in reorganization.  It is an operating company

1   with its operations throughout Brazil.  It is centered in

2   Sao Paulo, as per the venue order from the -- the Court

3   finding that.

4                    We have, I believe, met all of the technical

5   procedural requirements to file all the correct pieces of

6   paper, the corporate ownership statement, the notification

7   if there's any other main or non-main proceedings.

8                    There is no pending litigation in the

9   United States that the foreign representative is aware of.

10  Our ---

11                   THE COURT:  Are you asking for anything

12  special in the order?

13                   MR. GROSSMAN:  No, Your Honor, and with

14  respect to the order, we have revised the order in light

15  of the Court's ruling in the SAM case, to make the

16  modifications that the Court ordered in that case, which

17  includes, I think, the removal of the -- there was a

18  60-day period, we removed that from the proposed form of

19  order we intend to submit.

20                   We have modified the Paragraph 9, as we had

21  done in the SAM case, to make it more clear and to make

22  sure that we provide footprints in the court file of who

23  we've given official notice of the bankruptcy to.

24                   THE COURT:  But you -- but you have

25  something similar to the SAM case, and I -- I printed a

Page 12

1    copy of that order because I thought we might be

2    referencing it, that's Docket Entry 8 in 18-23941.

3                    So you included the language as it was

4    modified at the hearing in that case --

5                    MR. GROSSMAN:  Correct.

6                    THE COURT:  -- for parties to advise if they

7    are in custody or control of assets --

8                    MR. GROSSMAN:  Correct.

9                    THE COURT:  -- some then notification.

10                   MR. GROSSMAN:  It is lifted directly from

11   that order, Your Honor, what we intend to propose to the

12   Court.

13                   THE COURT:  All right.

14                   MR. GROSSMAN:  Just so the Court is aware,

15   because I asked these questions, this is a reorganization.

16   There is a list of creditors that has now been developed.

17   They are waiting to finalize the Meeting of Creditors,

18   which is different than a Meeting of Creditors that we

19   would have here in the states.  This is a Meeting of

20   Creditors where they actually vote on the plan.

21                   The plan was proposed also last month.  I am

22   told that the chances that the first time they meet the

23   plan gets approved is slim, that these things are

24   adjourned as the folks negotiate the plan going forward.

25                   So we expect it's going to be a fairly busy

1    first quarter of 2019 in Brazil on the reorganization, and

2    a fairly busy first quarter of 2019 in this Court as we

3    try and find out where all -- where -- where some of the

4    money went.

5                    THE COURT:  So the -- the fare structure,

6    and the requirement that they provide free transportation

7    for certain groups, has that -- has that changed or is

8    that still an operational problem for them?  I'm just

9    curious.  I know these aren't really --

10                   MR. GROSSMAN:  Yeah, I don't know if

11   that ---

12                   THE COURT:  -- 15 issues.

13                   MR. GROSSMAN:  Yeah, I don't know if that

14   regulation has changed.

15                   MR. VIERA:  Can I?  (Inaudible.)

16                   MR. GROSSMAN:  Yeah, yeah, you can -- stand

17   up.

18                   THE COURT:  Okay.  This is ---

19                   MR. VIERA:  It did not change, Your Honor.

20                   THE COURT:  This is Mr. Viera?

21                   MR. GROSSMAN:  Yes.

22                   THE COURT:  Okay.  All right.

23                   Well, I won't explore at this point the

24   reorganization, we'll see how that plays out, and it's

25   a -- it sounds like it's a down the road a piece before

1   you would be seeking -- obtaining hopefully a confirmation

2   order or the equivalent and -- and enforcement of it here

3   if -- if -- if even necessary.

4              MR. GROSSMAN:  Correct, Judge.

5              THE COURT:  Because you're -- you're --

6   you're here mostly looking for assets, not necessarily to

7   bind U.S. creditors to a Brazilian plan?

8              MR. GROSSMAN:  That's correct, Judge.

9              THE COURT:  Okay.  All right.  Then I don't

10  have any further questions, and it's all laid out and

11  presented well.

12             So if the order is similar in form to the

13  SAM In -- SAM Industrias order -- I should at least learn

14  how to read and pronounce Portuguese better by now, even

15  if ---

16             MR. GROSSMAN:  We'll -- we'll find some

17  websites for you to -- to ---

18             THE COURT:  Because it's not like Spanish

19  where it -- or is it, where the -- the letters have the

20  same pronunciation?  You don't know?

21             MR. GROSSMAN:  I'm going to have to ask that

22  question.

23             THE COURT:  No, we can take it up.

24             MR. GROSSMAN:  I -- I am told that there's a

25  web -- there's a podcast that says news in slow

Page 15

1    Portuguese, so you can listen to the news and they'll do

2    it in Portuguese.  I'm still trying to master basic

3    Spanish, so I'm not up to Portuguese yet.

4                    THE COURT:  Okay.  My -- my -- my law clerk

5    probably can help me if -- at least -- at least I should

6    be able to read the names without embarrassing myself.

7                    For now we'll -- we'll enter the order and

8    we'll see where the case goes, and we'll be back at 2:00.

9                    Thank you.

10                    MR. GROSSMAN:  Very good.  Thank you,

11   Your Honor.

12                    THE MARSHAL:  All rise.

13                    (Thereupon, the hearing was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

Page 16

1

2

3                    **CERTIFICATION**

4

5    **STATE OF FLORIDA         :**

6    **COUNTY OF MIAMI-DADE  :**

7

8              **I, Margaret Franzen, Court Reporter and**

9    **Notary Public in and for the State of Florida at Large, do**

10   **hereby certify that the foregoing proceedings were**

11   **transcribed by me from a digital recording held on the**

12   **date and from the place as stated in the caption hereto on**

13   **Page 1 to the best of my ability.**

14             **WITNESS my hand this 28th day of February**

15   **2019.**

16

17

18         _____

19                 **MARGARET FRANZEN**

20           **Court Reporter and Notary Public**
         **in and for the State of Florida at Large**
21              **Commission #GG187411**
                  **April 14, 2022**

22

23

24

25