UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                    Chapter 15

VIAÇÃO ITAPEMIRIM S.A., TRANSPORTADORA
ITAPEMIRIM S/A, ITA – ITAPEMIRIM
TRANSPORTES, S/A, IMOBILIÁRIA BIANCA            Case No.: 18-24871-RAM
LTDA, COLA COMERCIAL E DISTRIBUIDORA
LTDA, VIAÇÃO CAIÇARA LTDA and FLECHA S/A
– TURISMO, COMÉRCIO E INDÚSTRIA

Debtors in a Foreign Proceeding.
_____ ___/

**FOREIGN REPRESENTATIVE'S RESPONSE TO MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, MOTION FOR ABSTENTION (D.E. 141)**

ELIAS MUBARAK JUNIOR (the "Foreign Representative"), not individually but solely

in his capacity as the duly appointed foreign representative of the Debtors in a foreign bankruptcy

proceeding, respectfully files this Response to Camilo Cola Filho's ("Cola Filho") Motion to

Dismiss, or, in the Alternative, Motion for Abstention (D.E. 141) and states as follows:

I.      **Preliminary Statement.**

After failing to quash service and failing to stay his examination, Cola Filho continues his

efforts to frustrate the Foreign Representative's legitimate efforts at recovery of the debtors' assets

as he attempts to avoid his Rule 2004 Examination scheduled on March 17 and 19, 2020, at any

cost.  His latest effort is as meritless as before.

First and foremost, the Motion is not brought in the procedurally proper context as it seeks

relief from an order, but does not even attempt to meet the Rule 60(b) standard.  Additionally, Cola

Filho lacks standing to move to dismiss the petition.  He lacks Article III standing as he is not an

aggrieved party by the filing of the petition and the recognition of the petition.  He also lacks a

pecuniary interest in this petition, as he is not a creditor.

1

As to Cola Filho's argument that the Foreign Representative's "pretense for this Chapter 15  was completely gutted when the Debtors' plan was confirmed", Cola Filho's argument fails because it entirely relies on a false premise --  that because the  mention of the Chapter 15 and any recovery therefrom is mentioned in the Minutes of the Creditors Meeting (see Notice of Subsequent Information (D.E. 82), p. 7) that it somehow invalidates this proceeding and the Chapter 15 Petition.   This is fatal to Cola Filho's argument because, under Brazilian Law, the Minutes from the Creditors Meeting are legally significant, enforceable and are incorporated into the Plan of Reorganization and the Reorganization Order.

Cola Filho also asserts that the Foreign Representative only seeks discovery in this petition in aid of various proceedings between Cola Filho and the trustee (EXM) and/or CSV and SSG. First, as is obvious from the document requests in the subpoena, the discovery seeks information regarding assets of the debtors as well as information regarding diversion of assets by and/or for the benefit of Cola Filho and/or others, consistent with the mention of the same in the Minutes. Second, this argument resembles the prior "pending proceeding" arguments raised by Cola Filho which the Court already properly rejected because the Foreign Representative is not a party to those proceedings, never sought discovery related to the alleged disputed ownership of the Debtors (the subject of the arbitration proceeding) and a foreign representative in a Chapter 15 is not prohibited from seeking discovery to aid the foreign bankruptcy proceeding.  Additionally, as Cola Filho well knows, the only pending action outside of the Brazilian Bankruptcy Case or various proceedings within the Brazilian Bankruptcy Case, was the aforementioned arbitration, which was an unrelated dispute between the current and former owners of the Debtors.  Notwithstanding, the arbitration was dismissed on December 9, 2019.  Thus, there is not even a pending dispute regarding the ownership of the debtors.

Cola Filho also argues that the Foreign Representative was not appointed by a Court, but only appointed by CSV and SSG. However, as Cola Filho argues later in his motion, the Brazilian Proceeding is a Re-organization, in which the Debtors and Creditors direct the proceeding, not the Court. Additionally, as has been previously briefed before this Court, no order of appointment is required; rather, section 101(24) simply requires that such representative be "authorized" to administer the reorganization or the liquidation of the debtor's assets or affairs in the foreign proceeding.

In this instance the Foreign Representative was authorized to serve in that capacity by the debtors through their authorized board members via a valid corporate resolution in compliance with section 101(24).

## II.    <u>The Motion Is Not Procedurally Proper.</u>

Cola Filho has raised issues regarding the Foreign Representative's appointment in prior filings with this Court, and the Court instructed Cola Filho to couch these arguments in a Rule 60(b) motion. Specifically, in the Order Granting, Without Prejudice, Camilo Cola Filho's Motion to Quash, the Court stated:

> 6. To the extent that Mr. Filho seeks an order quashing the Subpoena because of challenges to the Foreign Representative's authority, the Motion is denied. Mr. Filho first articulated a fulsome challenge to the Foreign Representative's authority in his reply brief [DE #51]. If Mr. Filho seeks to pursue this challenge, he must file a separate motion for relief from the Order Granting Recognition of Foreign Main Proceeding [DE #8] pursuant to Fed. R. Bankr. Pro. 9024 and Fed. R. Civ. Pro. 60.

Despite this language, Cola Filho did not file the motion under Rule 60(b) and did not attempt to meet the Rule 60(b) standard. A Rule 60(b) motion must be filed within a reasonable time. Fed. R. Civ. P. 60(c)(1). Cola Filho has had knowledge of the facts relating to the Foreign Representative's appointment since at least the filing of his Reply to Foreign Representative's Response to Motion to Quash or for Protective Order (D.E. 51) on April 26, 2019, yet failed to

raise the same in a direct challenge to the petition until the Motion, filed on December 27, 2019. He has *still* failed to raise the same in the proper procedural vehicle.  Additionally, Cola Filho raised similar pending proceeding arguments in D.E. 51, and also failed to raise them in a direct challenge to the petition until the Motion.

This several-month delay between Cola Filho's awareness of these facts and the filing of this motion, even if it were a proper Rule 60(b) motion, is not reasonable.  See, e.g., Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 906 (6th Cir. 2006) (waiting over eleven months to file motion for relief from default judgment did not comply with requirement to file motion within reasonable time); Kahle v. Amtorg Trading Corp., 13 F.R.D. 107, 109 (D.N.J. 1952) (nine-month period between rendering of judgment and filing of motion for relief was not reasonable where plaintiffs possessed evidence upon which the judgment was based at the time the judgment was entered); Maine Nat. Bank v. F/V Explorer, 663 F. Supp. 462, 466 (D. Me. 1987), aff'd, 833 F.2d 375 (1st Cir. 1987) (nearly three-month time period between entry of default judgment and filing of motion for relief was not reasonable where defendant failed to move for relief until six weeks after becoming aware of default judgment).

**III.    Cola Filho Lacks Standing to Move for Dismissal.**

To have standing in a bankruptcy case, courts consider two matters—constitutional requirements and prudential factors.  See E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 984 (11th Cir.1990).  To satisfy constitutional standing, one:

> [first] must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  To have statutory standing in a bankruptcy case, a party must be a "party in interest."  Walden v. Walker (In re Walker), 515 F.3d 1204, 1212 (11th Cir. 2008).  "Bankruptcy standing is narrower than Article III standing ... [T]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings."  In re Mohr, 538 B.R. 882, 884 (Bankr. S.D. Ga. 2015) (Debtor lacked standing to object to creditor's claims where the debtor had already received a discharge, the Trustee was performing his duties, and a surplus was not reasonably likely to be generated).

Cola Filho lacks both Article III standing and standing under the code.  Cola Filho has suffered no concrete, particularized, actual or imminent invasion of a legally protected interest traceable to the recognition of the Chapter 15 petition that could be redressed by dismissal.  Cola Filho is also not a party in interest or someone with a pecuniary interest in the outcome of the recognition.  It is undisputed that Cola Filho is not a creditor of the debtors.  He is also not an owner of the Debtors.  He also cannot even argue that the ownership of the debtors is disputed, as the arbitration proceeding involving CSV and SSG was dismissed.

That Cola Filho is a discovery target and potential litigation target is also insufficient to confer standing to move to dismiss the proceeding, or for abstention.  See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig., 08-MD-01916-KAM, 2017 WL 5447714, at *4 (S.D. Fla. Apr. 26, 2017), aff'd sub nom. DOES 1-98 v. Boies, Schiller & Flexner, LLP, 709 Fed. Appx. 684 (11th Cir. 2017) ("Plaintiffs fail to allege how they are presently impacted based on a contingent liability, and thus fail to allege a cognizable injury in fact for Article III standing purposes."); In re Kutner, 3 B.R. 422, 425 (N.D.Tex.1980) (being sued still fails to establish an interest in the *res* to be administered and distributed, which is the touchstone

of determining a pecuniary interest).

The Brazilian Court has also recognized the Cola family's continued efforts as frivolous and devious attempts at delay and interference with the reorganization and excluded them from participating in the Brazilian proceedings.  See Brazilian Court Order dated April 8, 2019, attached hereto as composite **Exhibit "1"**, pp. 2-3:

> In addition, the trustee notes the possible interference by third parties in the petitions that claim its removal from office, since the creditors would never be interested in postponing conduction of the AGC, due to the fact that the credits subject to the judicial reorganization will only be paid after the plan is submitted to voting and approved, should this be the case.  And it identifies these third parties as members of the family Cola, who is known for using postponement strategies against the judicial reorganization of the activity that belonged to them in the past.

On page six of this order, the Court warned that the Cola family, and those operating as proxies for them, would not be permitted to speak and vote at the meeting of the creditors:

> Moreover, given the existence of litigation between the current and former controlling shareholders, I hereby warn the parties hereto, any other parties in interest and creditors, that only those who comply with article 37, §§ 3 and 4, of Law No. 11.101/2005 and meet the specifications suggested by the trustee and accepted by the Court in the motion on pp. 42,061-42,065 will have the right to take the floor and vote, precisely to allow the origin of the voting creditors' credits to be accurately identified.
>
> The AGC shall be limited to discussing the judicial reorganization plan submitted by the entities under reorganization, as well as any such changes and suggestions as may be the subject of a proposal at the time of the meeting.
>
> The trustee shall name and cause the minutes of the AGC to show any person who engages in any disruptive conduct or oversteps the boundaries of discussion at the AGC or the boundaries of civility, and is hereby authorized to see to it that any such person is removed, whether or not a holder of voting rights, if doing so should prove necessary, without prejudice to any other penalties the Court may impose.

See id. at p. 6.

Additionally, after analyzing Camilo Cola's participation in the Brazil main proceeding, the Brazilian Court rendered *another* order, stating as follows:

> Therefore, not as a mere assistant, much less as a third-party joinder can Camilo Cola be a party to this case, in view of the absolute lack of connection that would provide him with *ad causam* legitimacy to participate in this case.
>
> In view of the foregoing, I exclude him from the case and the order that registration of his attorneys-in-fact be cancelled, after expiration of the term to appeal this decision.
>
> Furthermore, the trustee shall notify the Court of Appeals of this decision in any appeals to be filed by Mr. Camilo Cola, in view of the acknowledgement of his subjective inappropriateness to the case.

See Brazil Court Order dated May 14, 2019, attached hereto as composite **Exhibit "2"**.  While the effect of this order was stayed pending an appeal of it by Camilo Cola, his appeal of the May 14, 2019 Order was resolved against him.  See Order Dated September 5, 2019, attached hereto as composite **Exhibit "3"**.

## IV.    The Petition Does Not Run Afoul of the Limitations of Chapter 15.

Cola Filho cites several authorities for the proposition that "Chapter 15 ancillary cases assert only territorial jurisdiction over a debtor's assets located in the United States and not as [sic] a discovery tool for non-United States assets."  Motion, p. 3.  While it is true that Chapter 15 ancillary cases cannot permit a foreign representative to administer property outside of the territorial jurisdiction of the United States, *none* of the authorities cited by Cola Filho support the notion that a Foreign Representative is barred from discovery of non-United States assets.  Chapter 15 contains no such territorial limitation as to the subjects of discovery or which assets may be discoverable.  See In re Platinum Partners Value Arbitrage Fund L.P., 583 B.R. 803, 811 (Bankr. S.D.N.Y. 2018) (permitting foreign liquidators to pursue discovery against U.S.-based entities through a Chapter 15 proceeding for purposes of advancing the foreign liquidation proceedings of the assets of the debtor in the Cayman Islands).  Instead, a review of the plain language of Chapter

15 plainly contemplates its use as a discovery tool. 11 U.S.C. § 1521(a)(4) in pertinent part provides:

> [u]pon recognition of a foreign proceeding, whether main or nonmain, …, the court may, at the request of the foreign representative, grant any appropriate relief, including— …(4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.

Moreover, Fed. R. Bank. P. 2004, allows a party in interest, such as a foreign representative, to subpoena documents relating to the "acts, conduct, or property or to the liabilities and financial conduction of the debtor." In re Platinum Partners Value Arbitrage Fund L.P., 583 B.R. at 801-811. Additionally, here, The Court's Recognition Order (D.E. 8) provides:

> 10. Foreign Representative is authorized to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors or the Debtors' estate pursuant to §1521(a)(4), the Federal Rules of Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

Notwithstanding the above, even assuming Cola Filho's proposition were correct, Cola Filho cannot establish that the Foreign Representative has run afoul of it. The discovery sought by the Foreign Representative in this case has been aimed at discovery of the debtors' assets in the United States for the goal of recovering them for the benefit of debtors' aggregate creditor body in Brazil. See Subpoena to Cola Filho, attached hereto as **Exhibit "4"**.

Cola Filho cites a few cases in his argument but they do not support it. In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 333 (S.D.N.Y. 2008), a case dealing with recognition in the context of determining whether or not the proceeding qualified for recognition as a foreign main or foreign non-main proceeding, focusing on COMI issues, is irrelevant.

In re Barnet, 737 F.3d 238, 251 (2d Cir. 2013), cited for the proposition that, in light of section 1782, Congress "may have intended to limit the relief provided by chapter 15", is also inapposite.  The Barnet Court made this statement in dicta in the context of its discussion that Section 109(a) applies to Chapter 15.  This is incorrect, as set forth, infra.  In re Hughes dealt with the scope of discovery under Section 304, and determined that discovery in a 304 proceeding was not restricted to the type of discovery permitted under the laws of the jurisdiction of the main proceeding.  In re Hughes, 281 B.R. 224, 230 (Bankr. S.D.N.Y. 2002).  More concretely, the Hughes Court held that the depositions sought by the Joint Liquidators "contribute[d] to an economical and expeditious administration of this estate" and denied the motion to quash.  Id. at 231.  Thus, In re Hughes contradicts Cola Filho's argument.

In re Board of Directors of Hopewell, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001) is distinguishable because the requested discovery was sought solely to obtain information regarding a foreign arbitration.  Here, the Foreign Representative seeks to take discovery regarding the location of the debtors' assets and where and how they were diverted.  Cola Filho asserts that the arbitration proceeding concerns a dispute regarding the ownership of the Debtors.  Interestingly, Cola Filho fails to mention to the Court that the referenced arbitration proceeding was dismissed on December 9, 2019, weeks before the filing of the Motion to Dismiss.  The Foreign Representative's proposed discovery simply does not concern the disputed ownership of the interests in the Debtors, a dispute which does not involve the Foreign Representative or the debtors.  The other proceedings which are/were pending included two investigations being conducted by the trustee, EXM, in Brazil[1] and Camilo Cola's appeal of an order issued by the Court of Appeals of the State of Espírito Santo[2] – before the proceeding was transferred to São Paulo - which is

---

[1] Proceeding numbers 0088488-92.2018.8.26.0100 and 0088485-40.2018.8.26.0100.
[2] Proceeding number 0007747-41.2019.8.08.0000.

under seal.  The Foreign Representative's efforts here also do not concern the investigations by the Trustee to which the Foreign Representative is not a party nor do they relate to the venue of the Brazilian proceeding.  There is also no risk of conflicting decisions, as this is a Chapter 15 ancillary proceeding and not an adjudicatory proceeding.

V.    **The Grounds for this Chapter 15 Have Not Ceased to Exist and the Court Should Not Dismiss the Petition.**

Cola Filho argues under sections 305, 1501 and 305 that this petition should be dismissed, based entirely on the erroneous propositions that the Reorganization Plan does not (i) provide for this Petition, (ii) provide for the recovery of any litigation claims, pursued in this Petition, or (iii) provide for distribution of any recoveries to creditors, and that the only mention of the same is in the Minutes of the Meeting of the Creditors; and the irrelevant fact that the Foreign Representative was never given authority by the Brazilian Court or Reorganization Plan to file the Chapter 15, pursue discovery or pursue litigation.

Cola Filho's argument seeks to impose concepts of U.S. law requiring preservation of claims and reservation of jurisdiction to the Brazilian reorganization involving the Debtors.  This is easily upended because it is undisputed that the Minutes of the Creditors' Meeting discuss the Petition and specifically provide that (1) the proceeds from the Petition will be distributed to the creditors, and; (2) that the Foreign Representative was appointed by the debtors.  See Minutes, attached hereto as composite **Exhibit "5"** on page 3.  The Minutes, state in pertinent part:

> Mr. Elias, representative of the reorganization parties …
>
> Mr. Elias reported that there are indications of a crime committed by the former shareholder of the companies in the international sphere, which is why a proceeding was established to investigate the diversion of amounts in the United States. Therefore, if any amount is determined in that sphere, it shall be used exclusively to pay creditors here in Brazil.

The Creditors signed the Minutes on page three.  Id.  A powerpoint was presented to the creditors, explaining the Petition in more detail.  See Powerpoint Presentation, attached hereto as composite **Exhibit "6"**.  Both the Minutes of the Creditors' Meeting and the Powerpoint Presentation were filed with the Court.  Additionally, the Creditors' Meeting and the Minutes are discussed frequently in the Order Confirming the Reorganization Plan.  Id. at pp.: 1-4, attached hereto as composite **Exhibit "7"**, *passim*.

## A. The Minutes of the Creditors Meeting Are Legally Significant and Incorporated into the Reorganization Plan.

Cola Filho's unstated premise that the Minutes of the Creditors' Meeting are not legally significant, binding and enforceable is incorrect and contradicted Brazilian statutory law, Brazilian decisional law, and by Brazilian Legal Commentators.

Articles 35, 37 and 56 of Law 11.101/2005 establish that after the proposed Reorganization Plan is presented, the creditors meet to determine approval, rejection or modification of the plan, and to discuss other matters that affect the interests of the creditors.  Significant events and outcomes of the Creditors' Meeting are recorded in a document, the Minutes, which is signed by the participants/creditors and the debtors:

**Article 35.**

The general meeting of creditors shall be responsible for deliberating on:

I - in judicial recovery:

a) approval, rejection or modification of the judicial reorganization plan submitted by the debtor;

(…)

f) any other matter that may affect the interests of creditors;

**Article 37.**

Paragraph 7. Resolutions of the meeting shall be recorded in minutes containing the names of the attendees and the signatures of the president, the debtor and two (2)

members of each of the voting classes, which shall be delivered to the judge, together with the attendance list within 48 (forty eight) hours.

**Article 56.**

Paragraph 3. The judicial reorganization plan may be altered at the general meeting, as long as there is express agreement of the debtor and in terms that do not imply reduction of the rights exclusively of the absent creditors.

Several Brazilian Decisions have recognized the legal significance and binding effect of the Creditors' Meeting and the Minutes, and the incorporation of the Minutes into the Reorganization Plan.

In Court of Appeal of the State of São Paulo. Interlocutory Appeal 2071950-74.2019.8.26.0000. Rapporteur: Alexandre Lazzarini. Judging Chamber: 1st Chamber Reserved to Commercial Law. Judgment date: June, 24/2019, the debtor's reorganized plan was confirmed after the meeting of creditors. However, the debtor later asserted that there were material errors in the minutes and sought to correct the alleged errors. The lower Court denied relief, prompting the appeal. The Appellate Court held that the minutes complied with the requirements of paragraph 7 of article 37 of Law No. 11,101/05 and in its holding, discussed the minutes, including the effect of the minutes and the legal significance of the minutes (emphasis added):

> "It is noted that the minutes were drafted clearly and succinctly, **listing the changes to the judicial reorganization plan presented by the attorney of the company under reorganization at the meeting.** It is also reported that, at the end of the meeting, the court administrator read the minutes, which were unanimously approved and duly signed and initialed on all pages, it is not believable that the material errors now pointed out by the appealing party were not noticed at the time. In addition, it is emphasized that the correction of the errors alleged by the company under reorganization would result in a more serious situation for creditors, as the judicial administrator pointed out in his statement on pages. 124/133, so that the contentions of the company under reorganization cannot be accepted, under penalty of violation of the **sovereignty of the meeting.**"

Id.    In Court of Appeal of the State of São Paulo. Interlocutory Appeal 2209887-63.2018.8.26.0000. Rapporteur: Azuma Nishi. Judging Chamber: 1st Chamber Reserved to Commercial Law. Judgment date: April, 17/2019 stated as follows (emphasis added):

> In principle, **the sovereignty of the decisions taken at the Creditors General Meeting is binding upon the court**, and it is not for the Judge to assess whether the plan is economically viable or not. This is a matter that falls within the orbit of the creditors' private interests, which may, in the Meeting, accept new conditions for debt novation. (...) Moreover, one cannot lose sight of the fact that one of the **basic and informing principles of the judicial reorganization is the sovereignty of assembly decisions,** with a focus on protecting the business character of business activity."

In Court of Appeal of the State of São Paulo. Interlocutory Appeal 2207485-77.2016.8.26.0000. Rapporteur: Cesar Ciampolini. Judging Chamber: 1st Chamber Reserved to Commercial Law. Judgment date: March, 09/2019, the Court considered an interlocutory appeal of the ruling approving the reorganization plan.  The Court affirmed the approval because, as described in the Minutes of the Creditors' General Meeting, the creditors considered the plan originally presented, as well as proposed modifications, and stated that they sufficiently understood the plan and were convinced to approve it.  See id.  The Court specifically referenced the minutes of the creditors' meeting and relied upon them in reaching its decision (emphasis added):

> "**as described in the Minutes of the Creditors General Meeting of the Judicial Reorganization** (...), **the creditors deliberated on the originally submitted plan, as well as on the proposed changes at the meeting**, and stated themselves sufficiently understood and convinced to approve it. (...) So, **given that the creditors decided freely, with unambiguous knowledge of all aspects of the judicial reorganization plan** and observing the legal quorum of approval, there is no alternative but to **ratify the judicial recovery plan submitted".**

Id.

Brazilian Legal Scholars have also commented on the nature of the minutes of the creditors' meeting.  See, e.g., Comments on the new bankruptcy and corporate recovery law: Law

13

No. 11,101, of February 9, 2005/coordinators Osmar Brina Corrêa-Lima, Sérgio Mourão Corrêa

Lima. - Rio de Janeiro: Forensic, 2009, pp. 275-276, which states (emphasis added):

> In fact, the minutes are the proving document of the legal affairs carried out during the developments of the meeting and, for this reason, must contain the full discussions and the resolutions taken. In a broader way, the minutes are the extrajudicial document that concentrates and perpetuates the facts occurred during the meeting.
>
> **This accuracy in the elaboration of the minutes is fully justifiable, since it is a probative document intended to take effects in court**, from its attachment to the case file, within 48 (forty-eight) hours from the closing of the meeting.
>
> The minutes allow the control of the legality and legitimacy of the work performed at the general meeting, especially in its installation and deliberations. **Therefore, the minutes, are recorded in a document that has legal significance as it registers the deliberations and the will of the creditors' communion.** This document from the meeting also allows dissenting and absent creditors to present allegations of irregularity and nullity against the deliberations and the majority's will. And the attachment of the minutes to the case file, along with the attendance list, enables the unambiguous knowledge of the missing creditors.

Similarly, the Manual of Good Practices for Judicial Reorganization/authors Daniel Carnio

Costa, Alexandre Nasser de Melo. Vol. 3 (2019) of IMODEV Journals Homepage, states, in

pertinent part, as follows (emphasis added):

> Such understanding comes from the fact that the Reorganization Plan is presented by the debtor to the creditors that, may or may not, in assembly, be approved, constituting, the way shown by CAMPINHO, **a legal act with evident "innovative features", meaning that it is capable of creating an alteration or modification of legal acts preterit to the Reorganization.**
> The position of Minister Nancy Andrighi, member of the Superior Justice Court, when judging an Appeal, highlights the necessity of compliance with formal validity requirements:
>
> **The board of creditors is sovereign in its decisions regarding judicial recovery plans.** However, the deliberations of this plan are subject to the validity requirements of legal acts in general, which are subject to judicial control.

Cola Filho cites and discusses numerous Brazilian sources on very general issues of the

necessity of specificity in contracts for contractual covenants to be binding, all in support of an

14

argument analogizing the Reorganization Plan to a contract. These authorities support, rather than undermine the Foreign Representative's argument because this Petition and the distribution of any recoveries from it to the creditors are specifically referenced in the Minutes here and anticipated as part of the reorganization plan of the debtors.

**B. The Foreign Representative's Valid Appointment by the Debtor Was Sufficient.**

Cola Filho raises—again—that the Foreign Representative was not appointed by the Court. Beyond the procedural issues discussed, <u>supra</u>, there has been no significant change in the law since he last unsuccessfully raised this argument in his Reply to Foreign Representative's Response to Motion to Quash or for Protective Order (D.E. 51).

Now, as before, no order of appointment is required; rather, section 101(24) simply requires that such representative be "authorized" to administer the reorganization or the liquidation of the debtor's assets or affairs in the foreign proceeding. <u>See</u> 11 U.S.C. §101(24); <u>In re Bd. of Dirs. of Hopewell</u>, 275 BR. 699, 707 (S.D.N.Y. 2002) (interpreting prior version of section 101(24) of the Bankruptcy Code and stressing that "nothing in the statute requires a court appointment"); <u>In re Bd. of Directors of Telecom Argentina S.A.</u>, No. 05-17811(BRL), 2006 WL 686867, at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) ("There is no dispute that the Board is a 'foreign representative' of Telecom Argentina and that venue in this district is proper."); <u>Netia Holdings</u>, 277 B.R. 571, 587 n.76 (Bankr. S.D.N.Y. 2002) (holding same); <u>In re Kingscroft Ins. Co. Ltd.</u>, 138 BR. 121, 124 (Bankr. S.D. Fla.1992) (holding that the board of directors for the petitioners qualified as the foreign representative, and further noting that under the laws of the United Kingdom and Bermuda—which governed the foreign wind-up proceedings—"the boards of directors of companies under pending winding-up petitions retain the authority to manage the companies," and further noting that "[t]his arrangement may be analogized to the 'Debtor in Possession' notion of U.S. bankruptcy law"); <u>In re Corporacion Durango, S.A.B. de C.V.</u>, 08-

13911 RDD, 2008 WL 9375542, at *1 (Bankr. S.D.N.Y. Dec. 11, 2008) ("Petitioner, Gabriel Villegas Salazar, who serves both as General Counsel and Secretary of the Board of Directors of the Debtor, has been duly appointed and authorized to serve as the Debtor's "foreign representative" with respect to the Concurso Proceeding within the meaning of section 101(24) of the Bankruptcy Code.").

Here, the Foreign Representative attached a Power of Attorney by the Debtors authorizing him to act as the foreign representative of the Brazil Proceeding, a proceeding which is analogous to a Chapter 11 proceeding in the U.S. wherein a debtor is in possession.  In this instance, the Power of Attorney authorizes the Foreign Representative to, among other things, initiate legal proceedings in any court of the United States of America which this Court already properly found to be sufficient to meet the required elements for the petition for recognition. See D.E. 2, Exhibit 1(A).

**C. The Petition Should Not Be Dismissed Under Sections 305, 1501 and 1517.**

The factual basis supporting Cola Filho's arguments for dismissal under sections 305, 1501 and 1517 is erroneous.  The Reorganization Plan with the Minutes incorporated, discusses the Chapter 15 proceeding, and provides for the recovery of funds resulting therefrom to be disbursed to the creditors. As reflected in the legal authorities discussed above, it is a basic premise under Brazilian Law that the Minutes of a Creditor's Meeting are not only legally significant and enforced by Brazilian Courts but they also represent modifications and adjustments incorporated into the Reorganization Plan and approved by creditors.  Additionally, the Foreign Representative was validly appointed, and there is no legal justification for this Court to dismiss the case under 11 U.S.C. §1517(d) or to abstain under 11 U.S.C. §305(a)(2).

Entertaining Cola Filho's latest attempt at frustrating discovery relating to the debtors' assets by dismissing the Petition or, abstention, would undermine the stated policy aims of Chapter

15 of fostering comity and cross-border cooperation.   Cola Filho's arguments under sections 1501(a)(1) – (5) fail.   Dismissing the Petition would undermine the objective of cooperation between the courts of the United States and the courts of Brazil.   The Brazilian Courts have recognized the meddling and interference of the Cola family in Brazil numerous times as reflected in various orders.   This Court should not countenance Cola Filho's latest attempt, especially given the erroneous factual basis of Cola Filho's arguments.   Dismissal will also undermine legal certainty for trade and investment because discovery into Cola Filho's diversion of assets, along with potential recovery of such assets located in the United States would be, cut off.   This elimination of this potential recovery for the creditors' benefit runs counter to the confirmed reorganization plan as well as  to the goals of: (1) protecting the interests of the creditors and the debtor; (2) maximizing the value of the debtors assets, and; (3) rescuing financially troubled businesses.

       As to Cola Filho's section 305(a)(2) argument, Cola Filho also lacks standing to seek such relief, since section 305 specifies a "foreign representative may seek dismissal or suspension … ". 11 U.S.C. 305(b).  Also, neither the interests of the creditors nor the debtor would be served by ignoring the statements in the Minutes and taking any actions that would halt discovery of the debtor's assets in the United States.  Dismissal would only frustrate potential litigation and benefit Cola Filho and/or other potential discovery and litigation targets  The case of <u>In re RHTC Liquidating Co</u>., 424 B.R. 714 (Bankr. W.D. Pa. 2010) (cited by Cola Filho), is on point.  There, the Court declined to dismiss a parallel involuntary Chapter 7 petition that was filed because the petitioning creditors, who comprised roughly 85% of the non-insider creditors, had determined that the chapter 7 petition was in their best interest.  <u>Id</u>. at pp. 721-22.  In that case, as here, the creditor body determined that the filing of the petition was in the best interests of the creditors and

the creditor found that the interests of comity would be served by deferring to the reasoned decision of the creditors and their preference.  Id. at 721 – 724.  Here, as in RHTC, the creditors support the Foreign Representative's efforts.

Cola Filho also cites In re Gerova Fin. Grp., Ltd., 482 B.R. 86 (Bankr. S.D.N.Y. 2012) in support of his section 305(a)(2) argument, but in Gerova, the Court was considering recognition, not dismissal, and ultimately granted recognition.  See id., at pp. 93-94.

The analysis Cola Filho's section 1517(d) argument is similar.  At all times from the date of the filing of the petition to the present, the Foreign Representative has acted with the requisite authority to seek recognition and to continue to seek discovery of the debtors' assets, which has been conducted with the full knowledge and approval of the creditors.  These facts distinguish the case of In re British American Insurance Co. Ltd., 425 B.R. 884, 906 (Bankr. S.D. Fla. 2010), where the Court denied recognition as to a Bahamas proceeding because the foreign representative could not establish that the debtor had its center of main interests, or even an establishment, in the foreign jurisdiction.  This case dealt with COMI, and thus does nothing to support Cola Filho's argument.  Id.[3]

Here, the grounds for recognition existed at the time the proceeding was recognized and continue to exist and no termination of recognition or dismissal is warranted.  As in the cases of In re Estrategias En Valores, S.A., 601 B.R. 550, 554 (Bankr. S.D. Fla. 2019) In re Oi Brasil Holdings Cooperatief U.A., 578 B.R. 169, 198 (Bankr. S.D.N.Y. 2017) (both cited by Cola Filho), this Court should find that Cola Filho fails to meet his burden that the Petition should not have

---

[3] The Court also granted foreign non-main recognition as to a Saint Vincent and the Grenadines proceeding.  Id. at 916.

been granted or that there has been a change in circumstances that warrants termination of the recognition.

Cola Filho concedes that the Brazilian Bankruptcy Court retains jurisdiction to enforce the terms of the Reorganization Plan. See Motion, p. 14.  This, combined with the facts discussed, supra, regarding the Minutes, establish why Zhejiang Topoint Photovoltaic Co. v. Zhi Chen (In re Zhejiang Topoint Photovoltaic Co.), 600 B.R. 312, 320 (Bankr. D.N.J. 2019) (discussed by Cola Filho) applies here.  In Zhi Chen, the Court ruled that the foreign proceeding continued to qualify as a foreign main proceeding because assets would be collected and distributed to the creditors under the Court's supervision.  Thus, this Court should follow Zhi Chen and reject Cola Filho's arguments.

**VI.**    **Section 109(A) Does Not Apply in Chapter 15, and Even if It Did, It Is Satisfied Because at Least One of the Debtors Has Property in This Jurisdiction and Venue Is Proper.**

**A. Section 109(A) Is Inapplicable.**

While Cola Filho relies on In re Barnet, 737 F.3d 238 (2d Cir. 2013) and argues that: (1) Section 109(a) applies in Chapter 15; (2) none of the debtors have property here, and; (3) venue in this district is improper. Cola Filho does acknowledge the MMX decision and that this Court follows the majority view that Section 109(a) is inapplicable to Chapter 15.  See In re MMX Sudeste Mineracao S.A., Case No.: 17-16113-RAM (Bankr. S.D. Fla. Aug. 11, 2017), appeal dismissed, No. 17-24308-Civ, 2018 U.S. Dist. LEXIS 56239, at *2 (S.D. Fla. Apr. 2, 2018). Motion, p. 15.

The majority view is correct because application of Section 109(a) is inconsistent with the text of chapter 15 and with the specific venue statute governing Chapter 15 cases.  It is also contrary to the underlying Chapter 15 policies, and contradicts Eleventh Circuit precedent holding

that section 109(a) did not apply to former section 304 of the Bankruptcy Code.  Thus, this Court should follow the majority rule as it did in MMX and reject the rationale of In re Barnet.

**First**, chapter 15 addresses a "foreign representative", while Section 109(a) addresses a debtor, the party that obtains relief in cases brought under chapters 7, 9, 11 and 13 of the Bankruptcy Code.  Conversely, in a Chapter 15 case, which is merely ancillary to a foreign proceeding, the relief granted is provided to a "foreign representative" of the foreign proceeding to which that debtor is subject.  See, e.g., 11 U.S.C. §§ 1502, 1509, 1511, 1512, 1513, 1515, 1518 (all stating that relief is available to the foreign representative, as opposed to the debtor itself); see also In re Bemarmara Consulting A.S, No. 13-13037-KG, Hrg. Tr. at 8:19–9:2 (Bankr. D. Del. Dec. 17, 2013) (the requirements of section 109(a) "do not control" in chapter 15 cases); H.R .Rep. No. 109–31, at 106 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 169 ("Cases brought under chapter 15 are intended to be ancillary to cases brought under a debtor's home country, unless a full United States bankruptcy case is brought under another chapter.").

Chapter 15 contains its own definition of a "debtor", which is "entity that is the subject of a foreign proceeding." 11 U.S.C. 1502(a).  There is no provision in Chapter 15 that requires a foreign debtor to have assets in the United States.  Thus application of Section 109(a) would violate the rule of statutory construction that the specific governs the general. RadLAX Gateway Hotel v. Amalgamated Bank, 132 S.Ct. 2065, 2071 (2012) ("There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.") (citations and internal quotation marks omitted).

Section 1528 provides that, upon recognition of a foreign main proceeding, "a case under another chapter of this title may be commenced only if the **debtor has assets in the United States**."

11 U.S.C. § 1528 (emphasis added).  Additionally, subsections (2) and (3) of section 1410 provide that a Chapter 15 petition may be brought in a venue even when the foreign debtor has no assets in the United States.  28 U.S.C. § 1410(2) and (3).  Thus application of Section 109(a) would also violate the rule of statutory construction that interpretation should give all provisions meaning and not render portions of a statute duplicative.  See Legal Environmental Assistance Foundation, Inc. v. EPA, 276 F.3d 1253, 1258 (11th Cir. 2001) ("[I]t is an elementary principle of statutory construction that, in construing a statute, we must give meaning to all the words in the statute.") (citation omitted).

**Second**, the goals and purposes of Chapter 15 include incorporating "the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a).  The objectives for such cooperation include the "protection and maximization of the value of the debtor's assets." Id § 1501(a)(4). "Mandatory recognition when an insolvency proceeding meets the criteria fosters comity and predictability, and benefits bankruptcy proceedings in the United States that seek to administer property located in foreign countries that have adopted the Model Law."  In re ABC Learning Centres, Ltd., 728 F.3d 301, 306 (3d Cir. 2013).  Requiring that a debtor have assets in the jurisdiction frustrates these goals and purposes.

**Third**, Decisions regarding the former section 304, the predecessor statute to Chapter 15, held that section 109(a) did not apply to foreign debtors and should be applied to reach the same result under Chapter 15.  See In re Iida, 377 B.R. 243, 254 (Bankr. D. Hawaii 2007) ("Although case law developed under § 304 no longer directly controls chapter 15 cases, it continues to inform our determinations [as to chapter cases] to some extent.") (citations omitted); In re Goerg, 844 F.2d 1562, 1566-67 (11th Cir. 1988) (Rejecting the application of section 109(a) to foreign debtors

in ancillary cases: "a statute susceptible to more than one meaning must be read in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen."); Petition of Saleh, 175 B.R. 422 (Bankr. S.D. Fla. 1994) (determining that a governmental entity qualified for relief under former section 304 and ruling that section 109 was inapplicable under section 304).

**B. At Least One of the Debtors Has an Asset in This Jurisdiction.**

Even if this Court were to find that section 109(a) were applicable, at least one of the Debtors has an asset in this jurisdiction.  Nothing in Section 109(a) supports a reading that the nature, extent, value, or amount of the asset in the United States is relevant to the inquiry.  See In re Octaviar Administration Pty. Ltd., 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (noting that based on Drawbridge's emphasis on the plain meaning of the statute, it follows that the court should read section 109(a)'s requirement of "property" as any property).  Any asset, whether "a dollar, a dime or a peppercorn located in the United States," is sufficient under Section 109(a). In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del.2000).

A chose in action is a property right.  In re Ryder, 73 B.R. 116, 117 (Bankr. S.D. Fla. 1987). This District and other courts repeatedly have also held that a retainer in a law firm's trust account constitutes enough property to qualify as debtor pursuant to section 109(a).  In re MMX Sudeste Mineração SA, No. 17-16113-RAM, DE 9 (Bankr. S.D. Fla. June 9, 2017) (granting chapter 15 recognition of foreign proceeding where debtor's only property held in retainer account with foreign representative's law firm); In re Banca Turco Romana SA, No. 17-12995-AJC, Doc. 8 (Bankr. S.D. Fla. Apr. 6, 2017) (granting recognition where the debtor's only property were funds held in retainer account with Miami Law firm); In re Poymanov, No. 17-10516, 2017 WL 3268144, *4 (Bankr. S.D.N.Y. 2017) (holding that funds held in retainer account in possession of counsel constitutes property under section 109(a)); In re Berau Capital Resources Pte Ltd., 540

B.R. 80, 81 (Bankr. S.D.N.Y. 2015) (noting that section 109(a) "does not specify how much property must be present or when or for how long" such property must be present in the district and holding that a retainer held by the debtor's New York counsel satisfied section 109(a)); In re B.C.I. Finances Pty Ltd., 583 B.R. 288, 293 (Bankr. S.D.N.Y. 2018) ("Indeed, it is well established that '[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109.'"). See also In re Ocean Rig UDW Inc., 570 B.R. 687, 699 (Bankr. S.D.N.Y. 2017); In re Inversora Eléctrica de Buenos Aires S.A., 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016); In re Berau Capital Resources Pte Ltd., 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

Here, funds of the Debtor are held in a retainer in the undersigned's trust account to which the undersigned has no claim. See Agreement as to Funds Held in Trust Account, attached hereto as **Exhibit "8"**. Thus, unlike a fee retainer that might be drawn down, the funds held in the undersigned's trust account are not subject to being depleted as undersigned counsel for the Foreign Representative has no claim upon such funds. Additionally, at least one of the Debtors has potential causes of action for state-law avoidance claims, unjust enrichment and/or breach of contract against potential defendants located in Miami-Dade County at the time the petition was filed.[4] See 11 U.S.C. §1521(a); In re Condor Ins. Ltd., 601 F.3d 319 (5th Cir. 2010); Malone v. Iceberg Transport S.A. (In re Hold & Appel Transfer S.A.), 2013 WL 4824428, at *21 (Bankr. D.D.C. Sept. 6, 2013); American Pegasus SPC v. Clear Skies Holding Co., LLC, 1:13-CV-03035-ELR, 2015 WL 10891937, at *16 (N.D. Ga. 2015); In re Awal Bank, BSC, 455 B.R. 73 (Bankr.

---

[4] One of these potential defendants is Cola Filho. While Cola Filho claims he left the jurisdiction, he was present in Miami-Dade County when the petition was filed in November 2018. See response in opposition to the *Motion to Reconsider Order Granting, Without Prejudice, Camilo Cola Filho's Motion to Quash Pursuant to Fed. R. Bankr. P. 9024 (D.E. 105), passim.* To the extent Cola Filho argues that his alleged flight from Miami-Dade County is relevant, there is no support for the notion that property of the debtor may be removed from the jurisdiction post-petition, to retroactively destroy jurisdiction.

S.D.N.Y. 2011); In re AJW Offshore, Ltd., 488 B.R. 551 (Bankr. E.D.N.Y. 2013); In re Massa Falida Do Banco Cruzeiro Do Sul S.A., 2017 WL 1102814 (Bankr. S.D. Fla. Mar. 23, 2017). These potential causes of action are supported by the Debtor's books and records reflecting money owed by Cola Filho to the debtors, as well as indications that Cola Filho directed funds of one or more of the debtors to pay personal expenses or those of his family members.  See composite **Exhibit "9"**.  A self-serving claim by a discovery and/or litigation target that he/she is no longer residing in the jurisdiction does nothing to extinguish the rights to bring any such claims in this jurisdiction.

**C. Venue Is Proper in the Southern District of Florida.**

Given the above facts regarding the Debtors' property that was located in this jurisdiction at the time the petition was filed, venue is also appropriate in the Southern District of Florida pursuant to 28 U.S.C. § 1410(1).  Alternatively, venue is proper because the primary aim of the Chapter 15 petition was to investigate if funds of the debtors flowed through Cola Filho to obtain assets here.  At the time the Chapter 15 Petition was filed, Cola Filho resided with his family in the jurisdiction and was renting an apartment here.  Cola Filho also owned two businesses located in Miami-Dade County at the time the petition was filed and maintained a significant relationship with Miami office of the Gunster law firm.

**VII.    Neither SSG nor CSV Is a "Bad Faith Actor" and This Petition Was Not Filed in Bad Faith.**

Cola Filho's final argument, that SSG and CSV are bad faith actors and the petition was filed in bad faith, is meritless to the point of being frivolous.  Cola Filho's main factual basis for this contention is a motion filed by the Public Prosecutor.  This motion raises the same allegations that were previously rejected by the Brazilian Court.  Even if this were not the case, the motion has not been decided and the statements with it are mere allegations.  Last, the motion does not

seek removal of the Foreign Representative or dismissal of the Brazilian Re-organization Proceeding. Thus, the motion does not support the notion that SSG and/or CSV are "bad faith actors".

Cola Filho also again asserts, without citation, or merit, that this chapter 15 proceeding does not seek discovery of assets of Cola Filho and instead seeks to impermissibly obtain discovery of evidence for use in various proceedings between Cola Filho and the debtors, EXM, Foreign Representative and/or SSG and CSV. Yet Cola Filho fails to provide any details including the case numbers or other references regarding these alleged pending proceedings. This is again based upon the erroneous assertion that since the only mention of this Chapter 15 and the attempt to locate assets in the United States is in the Minutes of the Creditor's Meeting, the Re-organization Plan contains no mention of the same. These arguments are meritless for the reasons stated, supra.

**A. SSG and CSV Are Not "Bad Faith Actors".**

The Public Prosecutor's motion makes the same allegations against SSG and CSV as were raised by Andrea Cola in a proceeding she filed that was dismissed on September 25, 2019. See Order Dated September 25, 2019[5], attached hereto as composite **Exhibit "10"**. The Court found her claims to be meritless, sanctionable and (ironically) to have been filed in bad faith:

> In addition, the abuse of the right of action is evident in this case. As already mentioned, the petitioner is duly represented in the main case records of the court-supervised reorganization. All issues mentioned by her have already been analyzed by the Court, but the petitioner has failed to bring an appeal in due time.
>                                  ********
> In view of all these elements, it is necessary to acknowledge the intent to disturb the court-supervised reorganization, due to the conduct diametrically contrary to the procedural good faith and cooperation, in addition to the abusive exercise of the right of action represented by the proposal of an inappropriate new discussion of issues already discussed in the case records.

---

[5] This order was discussed previously with this Court regarding the Foreign Representative's motion for reconsideration of the order granting Cola Filho's motion to quash).

> In view of the above, I deny the grant of interlocutory relief sought, I dismiss the case and order it to be archived, and I acknowledge claimant's conduct as malicious litigation, ordering her to pay a fine in the amount of R$50,000.00, which amount is proportional to the parameters set forth in article 81 of the CPC and to the high amount in controversy of the main proceedings. I authorize immediate electronic provisional seizure to guarantee effectiveness of the final judicial relief, and the amount the claimant is ordered to pay shall remain in a judicial account until preclusion of the matter.

See Id., p. 7-8.

The Court stated that the Public Prosecutor also made a filing with similar allegations and that Andrea Cola had lied to the prosecutor to induce the Public Prosecutor to make similar erroneous allegations:

> Now, by means of other proceedings, the petitioner seeks to discuss, again, matters already subject to preclusion due to the lapse of time, using the .Judiciary to no avail, in the first and second levels of jurisdiction, in addition to intentionally inducing the Public Prosecutor's Office into error, as noted in its pronouncement on pages 512/ 518 and in the documents on pages 519 / 521.

Id. p. 7.

Two allegations of the Public Prosecutor's Motion were not raised previously by Andrea Cola or the Public Prosecutor.  Specifically, as to romanette numeral "v" in the Public Prosecutor's motion, this statement is based upon a press release from a small newspaper presented by one of the labor creditors who is allied with Cola Filho, and, as to romanette numeral "viii", the defendants to this motion have not yet been formally notified, so their deadline to reply has not passed, or even begun, yet.

Last, the Public Prosecutor's motion also does not seek relief that is consistent with dismissal of this Petition.  The Public Prosecutor does not seek removal of the Foreign Representative or dismissal of the Brazilian Re-organization Proceeding.  See Public Prosecutor Motion, p. 8.

**B. The Foreign Representative Did Not Bring this Petition in Bad Faith.**

Cola Filho asserts that there is a major risk of conflicting decisions between this proceeding and pending proceedings in Brazil. But this assertion is baseless. First, there are no adversary proceedings pending here. Second, the arbitration proceeding was dismissed. Third, there are no other proceedings pending in Brazil involving the debtors, EXM, the Foreign Representative and Cola Filho outside of the Foreign Re-organization Proceeding and a pair of investigatory files opened by EXM as to Cola Filho and EXM as to SSG/CSV to which the Foreign Representative is not a party. There simply is no possibility of conflicting decisions between this Chapter 15 proceeding and these investigatory files that did not involve the Foreign Representative. Fourth, as discussed above, the Minutes of the Creditor's Meeting discuss this Chapter 15 Petition and the potential recovery from it going to pay the creditors. These Minutes are legally significant and incorporated into the Re-organization Plan. Fifth the discovery at issue in the Chapter 15 has been appropriately tailored and complies with the applicable limitations.

These facts are easily distinguished from In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988), a case relied upon by Cola Filho. In re Balboa St. Beach Club, Inc., 319 B.R. 736, 740 (Bankr. S.D. Fla. 2005), finding there was no bad faith in bringing a bankruptcy case solely for the purposes of rejecting an overly burdensome executory contract, is similarly not supportive of Cola Filho's argument.

Cola Filho cites General Trading v. Yale Materials Handling Corp., 119 F.3d 1485, 1501 (11th Cir. 1997), which discusses three tests for determining bad faith. But none of those tests support the contention that the Foreign Representative filed this petition in bad faith. The "Improper purpose test" does not apply given the facts discussed herein. The chapter 15 was filed to permissibly search for and administer the debtors' US-based assets, which includes conducting

27

discovery of Cola Filho and related entities. The filing of the petition was not frivolous under Rule 9011 for the same reasons. Last, the "improper use test" is obviously inapplicable since the Foreign Representative is not using this petition as a substitute for collection procedures.

WHEREFORE, Foreign Representative respectfully requests that this Court enter an order (i) denying the Motion to Dismiss, and; (ii) entering any further relief this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on January 27, 2020 upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system.

Date: January 27, 2020

Respectfully submitted,
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
lblanco@sequorlaw.com
dcoyle@sequorlaw.com
Telephone:     (305) 372-8282
Facsimile:     (305) 372-8202

By:     /s/ Daniel Coyle
        Leyza F. Blanco
        Florida Bar No.: 104639
        Daniel Coyle
        Florida Bar No.: 55576